[Civ. No. 430. Fourth Appellate District.—September 24, 1930.]

ST. CLAIRE BROWN, Respondent, v. HOLZWASSER, INC. (a Corporation), Appellant.

484

Stearns, Luce & Forward for Appellant.

Adam Thompson, Gordon Thompson and Renwick Thompson for Respondent.

AMES, J., *pro tem.*—This is an action for personal injuries tried before the court without a jury. The defendant conducts a large department store in the city of San Diego. On the twenty-second day of November, 1926, in response to an advertisement, plaintiff entered said store for the purpose of purchasing certain merchandise which was then on sale, and, while walking on the main floor of said store, slipped thereon, fell over a balustrade and was severely injured. In her complaint she alleges that the accident was due to the fact that the defendant had caused said floor to have thereon a very slippery substance which had been placed upon the floor by defendant's employees, with the knowledge and consent of defendant, a short time before the plaintiff had entered the store and that while walking thereon her foot slipped, causing her to fall and sustain the injuries complained of. The answer of the defendant admits that she slipped and fell while walking

through the store; denies that such slippery substance had been placed upon the floor by defendant or its agents or employees, and, as an affirmative defense pleads contributory negligence on the part of the plaintiff.

The court found that the cause of plaintiff's slipping on the floor and receiving her injuries was due to the fact that the defendant caused the floor of said store to have thereon a very slippery substance, to wit, a cleaning compound, which had been placed thereon by the defendant and its servants, agents and employees, and that defendant did not use ordinary care in making said floor reasonably safe for the plaintiff and the invited public to walk thereon. The court further found that by and through the negligence of defendant, its servants, agents and employees in placing said slippery substance upon the floor of its department store and allowing it to remain thereon through the negligence and carelessness of the defendant, its agents, servants and employees, plaintiff did receive the injuries upon which the action is based. Judgment was thereupn entered in favor of the plaintiff, from which the defendant appeals.

The appellant attacks the judgment upon the sole ground that the evidence does not support the findings. In response to a question concerning the substance upon which the plaintiff slipped, she testified as follows: ''Q. Now when you slipped on this floor as you have testified, do you know upon what you slipped? A. There was something on the floor—some substance. I don't know what it was on the floor. I don't know whether it was grease or wax or what it was—something on the floor—some substance, but I could not tell you what it was. Q. Was it dull or shiny? A. It was shiny.'' She further testified as follows: ''Q. Now when you slipped on this floor, on this substance as you say, did you do anything else to find out what it was? A. Yes, I stooped over with both my hands and I felt of the floor with both hands. I stooped over twice and I felt something irregular, but I couldn't tell what it was—something irregular. Q. You mean something irregular upon the surface of the floor? A. Yes. Q. And was that slippery? A. It was slippery.'' She again testified with respect to the surface of the floor, ''it was something shiny and it looked to me like either wax or grease, but I don't know'', and that the area covered by such substance was about three

inches wide by eight inches long; that when she stepped upon the grease spot on the floor her foot "skidded" or slipped and left a mark upon the floor.

Mrs. Ethel K. Weed, a witness on behalf of respondent, who was in the defendant's store at the time of the accident, testified that she saw respondent slip and fall, and as witness approached respondent, she also slipped on the floor. She observed the marks on the floor, presumably caused by respondent's shoe as it slipped on the floor; that she touched the floor at the point where she saw the "skid marks" and that it "seemed oily"; that it might have been a waxed spot or some slippery substance; that it looked oily and felt so.

Llano Briggs, a son of respondent, visited the scene of the accident shortly after it occurred. He testified that he slid his foot along the floor and that it seemed slippery in some spots and not in others; that the slippery spots "seemed sort of shiny".

Respondent on being recalled to the stand testified that shortly after the accident a man who appeared to be in authority said, "On what floor did she fall? And some one spoke up and said, 'On the main floor', and he said, 'I told them not to put any more wax on that floor; she's the second one who has fallen and hurt herself', and then he brought a big chair for me and Mr. Porter and Mr. Turner got on the other side of me and carried me in that chair to the rest room."

Opposed to the proof introduced by respondent, it appears from the evidence adduced by appellant that it was the custom in the appellant's store to sweep the floors therein on every alternate night. Before sweeping said floors they were covered with sawdust with which oil was mixed for the purpose of preventing the spread of dust. It was also the custom to thoroughly scrub the floors about three times a year by applying thereto a cleansing compound and washing the floor by means of mops and brooms. This scrubbing process was followed by three or four applications of water for the purpose of removing the dirt and cleansing compound from the floor. This cleansing had occurred on the Saturday night preceding the accident, the accident having occurred on Monday morning. There is no

evidence in the record that the cleansing compound which had been so applied was an oily or greasy substance.

J. G. Turner, the head janitor in appellant's store, whose duty it was to keep the floors clean, was called as a witness on behalf of appellant and testified that he did not think that the cleansing compound which had been used on the preceding Saturday night would have a "slippery feeling" when dissolved in water, but that when applied to the floor and scrubbed "this brings out all the mud, and after it is put on it must have four or five clean waters to get that off again". He was further interrogated, "I say the water could make the soap go into ridges on any kind of floor?" And answered, "Possibly".

■ It is the rule in California that the keeper of a public place of business is bound to keep his premises and the passageways to and from it in a safe condition, and must use ordinary care to avoid accidents or injury to those properly entering upon his premises on business. (*Schmidt* v. *Bauer*, 80 Cal. 565, 567 [5 L. R. A. 580, 22 Pac. 256].)

In *Means* v. *Southern California Ry. Co.*, 144 Cal. 473 [1 Ann. Cas. 206, 77 Pac. 1001], it is said: "In order to constitute actionable negligence there must exist three essential elements—namely, a duty or obligation which the defendant is under to protect the plaintiff from injury; a failure to discharge that duty; and injury resulting from the failure. Not only must the complaint disclose these essentials, but the evidence must support them, and the absence of proof of any of them is fatal to a recovery."

In the case of *Brinkworth* v. *Sam Seelig Co.*, 51 Cal. App. 668 [197 Pac. 427], plaintiff entered a store conducted by the defendant, and while in one of the aisles in the store which was reserved for its customers, having made a purchase of merchandise, was taking her departure from the store when she stepped backward and fell over some lug boxes which had been left in the aisle, sustaining injuries upon which the action was based. In reversing the judgment of the lower court, which was entered after a motion for a nonsuit had been granted, the court said:

"One who, during business hours, lawfully enters a store to purchase goods does so at the implied invitation of the owner (*Herzog* v. *Hemphill*, 7 Cal. App. 116 [93 Pac. 899], upon whom the law imposes the duty of exercising ordinary

care and prudence to keep the aisles and passageways of the premises, in and through which by their location and arrangement a customer in making purchases is induced to go, in a reasonably safe condition so as to not unnecessarily expose him to danger or accident. (*Hart* v. *Grennell*, 122 N. Y. 371 [25 N. E. 354] ; *Schmidt* v. *Bauer*, 80 Cal. 565 [5 L. R. A. 580, 22 Pac. 256] ; *Means* v. *Southern Cal. Ry. Co.*, 144 Cal. 473 [1 Ann. Cas. 206, 77 Pac. 1001].) It has been frequently declared by the courts 'that negligence is a question of fact for the jury, even when there is no conflict in the evidence, if different conclusions upon the subject can be rationally drawn from the evidence'. (*Wahlgren* v. *Market Street Ry. Co.*, 132 Cal. 663 [162 Pac. 308, 64 Pac. 993].) . . . The jury might have properly concluded that in so obstructing the aisle defendant was guilty of the want of ordinary care and. that, although plaintiff had she looked might have seen the boxes, she was, under the circumstances, justified in assuming the place one of safety, and hence her failure to observe the obstruction was not negligence on her part.''

In *Williamson* v. *Hardy*, 47 Cal. App. 377 [190 Pac. 646], plaintiff sustained injury as a result of having slipped and fallen upon the floor of defendant's market because of having stepped on a piece of oil paper made slippery by the adhesion to it of scraps of fresh meat. The court held that the trial court did not err in denying defendant's request for a directed verdict, ''it was a question for the jury to determine whether or not the defendant was negligent in permitting such a substance to be lying upon the floor of his market where customers were wont and were required to walk while making their purchases therein''.

In the case of *Sharpless* v. *Pantages*, 178 Cal. 122 [172 Pac. 384], the negligence upon which this case is predicated is based upon the fact that the strips of carpet in a balcony aisle and stairs in a theater operated by defendant were so negligently laid and maintained that the plaintiff in passing down said stairs was tripped and thrown by reason of the fact that the carpet was loose. The court said:

''The contention that the motion for a nonsuit should have been granted is also without merit. The testimony of the plaintiff and other witnesses was sufficient to show that as she was going down the steps in question her foot slipped

because of the loose condition of the carpet and that her fall was occasioned thereby. It being the duty of the defendant to use ordinary care to maintain the carpet upon the steps in such condition that it would be safe for persons to pass thereon in an ordinary manner, the fact that the plaintiff's foot slipped as she stepped upon the carpet is some evidence tending to show that defendant had failed to do so, and it is sufficient to sustain the decision upon the motion for a nonsuit.''

 We think that the question of negligence in this case is a question of fact for the determination of the jury or, in the absence of a jury, by the trial court.

On the Saturday preceding the accident a cleaning compound had been applied to the floor for the purpose of removing dirt which had accumulated there over a period of several months. Prior to the application of the cleaning compound, sawdust mixed with oil had been applied to the floor at frequent intervals.

From this evidence and from all the circumstances in the case, we think that the jury could infer that the condition of the floor upon which respondent fell was due to the negligence of appellant.

The judgment is affirmed.

Cary, P. J., and Barnard, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 20, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 20, 1930.